

# THE ATTORNEY GENERAL
## OF TEXAS

PRICE DANIEL
ATTORNEY GENERAL

AUSTIN 11, TEXAS
August 8, 1952

Hon. C. E. Patterson
County Attorney
Brewster County
Alpine, Texas

Opinion No. V-1505:

Re: Official status of a
county commissioner fol-
lowing his conviction in
federal court for unlaw-
fully importing cattle
into the United States,
where execution of sen-
tence is suspended.

Dear Sir:

Your request for our opinion reads in part as follows:

"On the 7th day of July, 1952, one of the county commissioners of Brewster County was convicted in the United States District Court of Western District of Texas for im- porting cattle into United States unlawfully. It was ordered in the judgment in said Court, same being upon a plea of guilty, and without a jury, as follows: 'It is the order and sen- tence of the Court that the defendant, . . . , for the offense by him committed, be imprisoned for the period of ONE "1" YEAR and ONE (1) DAY in an institution to be designated by the At- torney General of the United States.' Said judgment further provided: 'And it appearing to the Court that the ends of justice and the best interests of the public, as well as the defendant, will be subserved thereby, it is further ordered that the execution of the sentence herein imposed be, and it is hereby SUSPENDED and said defendant released upon probation for a period of TWO (2) YEARS and committed to the custody, control and super- vision of Jesse J. Saxon, United States Pro- bation Officer for the Western District of Texas, upon conditions provided in the order of this Court made and entered on March 26th, 1946, . . .'

"QUESTION: Does this conviction in Federal Court, which was suspended, bar and suspend this County Commissioner from office?

" . . .

"This Commissioner was convicted under Section 545 of Title 18, USCA for illegal importation. This carries with it a maximum penalty of $5,000 and/or five years."

Section 5 of the Texas Election Code (V.A.T.S. Election Code, Art. 1.05) prescribes the conditions on which a person shall be eligible to hold the office of county commissioner. This statute reads, in part:

"No person shall be eligible to any State, county, precinct or municipal office in this State unless he shall be eligible to hold office under the Constitution of this State,..."

Section 2 of Article XVI, Constitution of Texas, provides:

"Laws shall be made to exclude from office, serving on juries, and from the right of suffrage, those who may have been or shall hereafter be convicted of bribery, perjury, forgery, or other high crimes. ..."

This constitutional provision contemplates that persons convicted of "high crimes" shall be ineligible to hold office in this State. Snodgrass v. State, 67 Tex. Crim. 615, 150 S.W. 162, 177 (1912). In regard to the meaning of "other high crimes," it was stated in Att'y Gen. Op. 0-2698 (1940):

"There would seem to be no doubt that the expression 'other high crimes' would include the crime of burglary. Certainly any crime of the same grade as the enumerated ones, namely, felonies, is comprehended by this provision of the Constitution."

The Legislature has interpreted these words to include all felonies, in the enactment of Article 5968, V.C.S., which reads:

"All convictions by a petit jury of any
county officers for any felony, or for any
misdemeanor involving official misconduct,
shall work an immediate removal from office
of the officer so convicted. Each such judg-
ment of conviction shall embody within it an
order removing such officer."

While Article 5968 may have been directed only
toward the procedure to be followed in removing the in-
dividual from public office when he is convicted in a
court of this State, it nevertheless reflects the legis-
lative interpretation of the constitutional provision.
A felony is defined in Article 47, V.P.C.:

"An offense which may - not must - be
punishable by death or by confinement in the
penitentiary is a felony; every other offense
is a misdemeanor."

Section 2 of Article XVI does not expressly
confine the disqualification to convictions under the
laws of this State, and it is our opinion that it was
not intended to do so. The same considerations of pub-
lic policy exist with respect to convictions obtained
in other jurisdictions as with respect to convictions
under our own laws. The fact that the offense for which
the person was convicted did not fall within the juris-
diction of the courts of this State does not lessen its
gravity or render the guilty individual any more fit to
serve as a public officer.

An analogy is found in disqualification for
jury service and suffrage. Pursuant to the requirement
of this constitutional provision, the Legislature has
enacted laws excluding from jury service all persons con-
victed of a felony. Art. 2133, V.C.S.; Arts. 616, 619,
V.C.C.P. In Amaya v. State, 87 Tex. Crim. 160, 220 S.W.
98 (1920), the court rejected the contention that the
conviction must have been obtained in a court of this
State, in the following language:

". . . The reasoning which underlies some
of these cases is that the judgment in a crim-
inal case cannot be enforced in another juris-
diction. This principle seems not controlling
in this state, in that the object of the Legis-
lature appears to be not the punishment of the

convicted juror, but the protection of society
against the pollution of the jury system by
committing its execution to persons whose moral
status has been judicially established as crim-
inal. . . ."

The disqualification results even though the wrongful
act would not have constituted a felony under the laws
of Texas. Hughes v. State, 105 Tex. Crim. 57, 284 S.W.
952 (1926). Also see Speer v. State, 109 S.W.2d 1150,
1154 (Tex.Civ.App. 1937, error dism.); Cisneros v. State,
147 Tex. Crim. 123, 179 S.W.2d 313 (1944). Similarly,
in Harwell v. Morris, 143 S.W.2d 809 (Tex. Civ. App.
1940), it was held that a person convicted of an offense
which was made a felony by federal statute was disquali-
fied to vote.

The federal statute under which the county com-
missioner was convicted (18 U.S.C.A. § 545) provides in
part:

"Whoever knowingly and willfully, with in-
tent to defraud the United States, smuggles, or
clandestinely introduces into the United States
any merchandise which should have been invoiced,
or makes out or passes, or attempts to pass,
through the customhouse any false, forged, or
fraudulent invoice, or other document or paper;
or

"Whoever fraudulently or knowingly imports
or brings into the United States, any merchandise
contrary to law, or receives, conceals, buys,
sells, or in any manner facilitates the trans-
portation, concealment, or sale of such merchan-
dise after importation, knowing the same to have
been imported or brought into the United States
contrary to law -

"Shall be fined not more than $5,000 or im-
prisoned not more than two years, or both."

It is provided in 18 U.S.C.A. § 1 that "any of-
fense punishable by death or imprisonment for a term ex-
ceeding one year is a felony." Clearly the offense com-
mitted was a felony as defined by both the state and the
federal statutes.

Passing next to the question of the effect of the suspension of the execution of sentence, in Att'y Gen. Op. 0-2698 (1940) it was held that the word "convicted" in Section 2 of Article XVI "embraces the status resulting from the application of the suspended sentence law of Texas to a verdict ascertaining and publishing the guilt of a person charged with a criminal offense." Under the Texas law a conviction is not a final one where the sentence is suspended. Art. 778, V.C.C.P.; Bierman v. State, 73 Tex. Crim. 284, 164 S.W. 840 (1914). Yet this opinion held that the defendant nevertheless has been "convicted" and is thereby rendered ineligible to hold office. However, it is not necessary to rest our answer on the reasoning of that opinion. Under federal law, a judgment of conviction is final where sentence is imposed, even though the execution of the sentence is suspended. Berman v. United States, 302 U.S. 211 (1937). In our opinion, unquestionably there has been a conviction in the present case within the meaning of Section 2, Article XVI of the Constitution.

Since it is our conclusion that a final conviction of a felony in a federal court renders a person ineligible for public office under Section 2, Article XVI of the Constitution, you are advised that the county commissioner is now disqualified to hold that office.

It remains for us to consider whether the conviction resulted in an automatic removal from office. Here, the officer was convicted upon a plea of guilty without the intervention of a jury. The answer to this question turns on the applicability of Article 5968, V.C.S., quoted above. This statute provides that "all convictions by a petit jury of any county officers for any felony . . . shall work an immediate removal from office of the officer so convicted." It further provides that the judgment of conviction shall embody within it an order of removal.

As we have stated, this statute may have been intended to operate only in cases of conviction by a court of this State, since it is obvious that the command for inclusion in the judgment of an order removing the officer could not be imposed on courts of other jurisdictions. Be that as it may, in Att'y Gen. Op. 0-2619 (1940) it was held that a conviction in a state court upon a plea of guilty where a jury was waived did not automatically remove the officer. In construing Article 5968, this opinion stated:

"The above statute speaks only of convictions by petit juries, perhaps because when it became law there could be no conviction of a felony except upon a jury trial. Article 10a, C.C.P., giving to the defendant the right to waive a jury in a felony case less than capital, upon a plea of guilty and with the consent of the District Attorney and of the Court, was not enacted until 1931. We are more inclined to think, however, that in passing Article 5968, with its requirement of a jury conviction, the Legislature had in mind Section 24, of Article 5, of the State Constitution, reading as follows:

"'County Judges, county attorneys, clerks of the District and County Courts, justices of the peace, constables, and other county officers, may be removed by the Judges of the District Courts for incompetency, official misconduct, habitual drunkenness, or other causes defined by law, upon the cause therefor being set forth in writing and the finding of its truth by a jury.'"

While we think there is argument for reaching a conclusion that neither Article 5968 nor Section 24, Article V. of the Constitution makes a jury verdict necessary where the defendant has elected to waive a jury, we are not strongly enough convinced of the correctness of that view to warrant overruling this opinion. We therefore hold that the officer was not automatically removed from office by the conviction in federal court without a jury, but that he is subject to removal through further proceedings in a district court of this State, as set out in Section 24 of Article V of the Constitution.

Article 6253, V.C.S., provides that a quo warranto proceeding may be instituted for ousting any public officer who unlawfully holds any office or who "shall have done or suffered any act which by law works a forfeiture of his office." We are of the opinion that this procedure is available in the present case. We are also of the opinion that a proceeding for removal could likely be had under Article 5970 et seq., V.C.S. In this connection your attention is directed to the fact that Article 5970 enumerates certain specific causes for removal, which do not include "other causes defined by law," as

stated in Article V, Section 24 of the Constitution. However, we think it likely that a court would hold this procedure available, by virtue of the constitutional provision, where the judgment of conviction did not itself remove the officer.

## SUMMARY

A county commissioner who is convicted of a felony in federal court and assessed a sentence, the execution of which is suspended, is disqualified to serve as county commissioner and is subject to removal from office by quo warranto proceedings under Article 6253, V.C.S.

APPROVED:

E. Jacobson
Reviewing Assistant

Charles D. Mathews
First Assistant

MKW:f:t

Yours very truly,

PRICE DANIEL
Attorney General

By *Mary K. Wall*
Mary K. Wall
Assistant