Harold PARO, Plaintiff,

v.

PENNSYLVANIA RAILROAD CO., a Corporation, Defendant-Third Party Plaintiff,

v.

SIMPSON EXPRESS & TRANSFER, INC., a Corporation, Third Party Defendant, Additional Third Party Plaintiff, Respondent,

v.

STEFFEN TRANSFER COMPANY, a Corporation, Additional Third Party Defendant, Appellant.

No. 30692.

St. Louis Court of Appeals.

Missouri.

July 18, 1961.

Motion for Rehearing or for Transfer to Supreme Court Denied Sept. 5, 1961.

Austin Knetzger, Hartman, Guilfoil & Albrecht, E. C. Albrecht, Jr., James L. Homire, Jr., St. Louis, for appellant.

Moser, Marsalek, Carpenter, Cleary, Jaeckel & Hamilton, Morris E. Stokes, Joseph H. Mueller, St. Louis, for respondent.

DOERNER, Commissioner.

This appeal involves a claim for indemnity by Simpson Express & Transfer Company against the Steffen Transfer Company. For the sake of convenience the parties will be referred to as Simpson and Steffen. Trial below was before the court sitting without a jury, and resulted in a judgment for Simpson in the sum of $5,041.16, from which Steffen has appealed.

The essential facts are not in dispute. The Pennsylvania Railroad and Simpson had entered into a written contract whereby Simpson agreed to transport less-than-carload freight between stations of the Railroad and places of business of patrons of the Railroad at St. Louis, Missouri, and environs, and to handle such freight to and from trucks from and to the platform of the Railroad. That contract contained a provision by which Simpson agreed to indemnify the Pennsylvania Railroad, as follows:

"* * * (3) To be responsible for, and to protect, save harmless and indemnify Railroad from and against all fines, penalties, loss, damage, cost and expense suffered or sustained by Rail-

road or for which Railroad may be held or become liable by reason of (a) loss or destruction of or damage or delay to property and freight in the handling, collection or delivery thereof hereunder, or loss or destruction of or damage or delay to property and freight while said property or freight is in Trucker's care, custody or possession hereunder; (b) injury (including death) to persons or property, or other causes whatsoever, in the event an attempt should be made to hold Railroad liable therefore, in connection with Trucker's business or operations hereunder; (c) violation of any law, rule or regulation of public authority with respect to the services of Trucker hereunder; (d) the issuance of any false or fraudulent bills of lading or the giving or receiving of any false or fraudulent receipts for any freight by Trucker, or by Trucker's agents, servants or employes; (e) failure of Trucker to make collections and remittances to Railroad as provided in this agreement, and (f) theft, embezzlement, defalcation, misrepresentation, or falsification by any device whatsoever on the part of Trucker or Trucker's agents, servants or employes."

Simpson, in turn, had entered into a written agreement with Steffen whereby Steffen agreed to load and transport outbound less-than-carload freight from the premises of shippers to certain stations of Simpson or to Pennsylvania's station in East St. Louis, Illinois, " * * * and to unload such shipments at the said stations." By its contract Steffen agreed to indemnify Simpson as follows:

"* * * 1.3 To be responsible for, and to protect, save harmless, and indemnify Simpson from and against any loss, damage, cost or expense which may be incurred by Simpson on account of: (A) injury to or death of persons, or loss, damage, or delay to property or freight caused by or resulting from the operations of drayman under this agreement: (B) the issuance of false

or fraudulent bills of lading, or the giving or receiving of false or fraudulent receipts for freight by drayman or his employees: (C) failure of drayman to make collections and remittances to Simpson as provided in this agreement: and (D) theft, embezzlement, defalcation, misrepresentation or falsification on the part of drayman or his employees."

Harold Paro, the original plaintiff in this action, was a truck driver for Steffen. Called as a witness by Simpson, he testified that on February 29, 1956 he picked up a shipment of three large crates of wire, each weighing about 1400 pounds, from Ludlow Saylor Wire Cloth Company and drove to the freight platform of Pennsylvania Railroad in East St. Louis. An employee of the Railroad attempted to remove the first crate from the truck by picking it up with a lift-truck, but the crate tilted as it was raised because the blades were too short. According to Paro, he told the employee to either get longer blades for the lift-truck or to use a chain, but his advice was rejected. While Paro and the operator of the lift-truck were standing alongside of Paro's truck, another Pennsylvania employee backed up the lift-truck, causing the tilted crate to slide off of the truck and hit Paro. After Paro had instituted his action against the Pennsylvania for the injuries he had sustained, the Railroad filed a third-party petition against Simpson. Simpson agreed with the Pennsylvania to assume the defense of Paro's suit against the Railroad, and, in turn, called upon Steffen to take over the defense of the suit. Steffen refused to do so, and Simpson, as additional third party plaintiff, then filed its third party petition against Steffen. Thereafter Simpson effected a settlement of Paro's action against the Pennsylvania Railroad for $4200, and expended the further sums of $91.67 for court costs, and $750 for attorney's fees, or a total of $5,041.67.

In its memorandum opinion the trial court found that Paro's claim for injuries resulted from the negligent acts and con-

**616**

duct of the Railroad's employees who were engaged in unloading Steffen's truck; that Paro's claim against the Pennsylvania "originated from Steffen's operations"; that "Simpson was required to respond (to the Railroad) upon its contractural responsibility"; and that Steffen was liable to Simpson for the payment made and expenses incurred by Simpson in the settlement of Paro's suit.

Steffen contends that the court erred in rendering the judgment in favor of Simpson, and in overruling Steffen's motion to set the judgment aside, because Simpson failed to prove a claim upon which relief could be granted. While variously stated, the fundamental basis of its contention is that under the Simpson-Pennsylvania contract, Simpson was under no duty to indemnify the Pennsylvania against the consequences of the Railroad's own negligence; that in assuming the defense of Paro's action against the Pennsylvania, Simpson acted as a volunteer; and that Simpson cannot hold Steffen liable to it under the Simpson-Steffen contract for the loss suffered by its voluntary action. Simpson argues that Steffen did not contend, in the trial court, that Simpson had no legal duty under its indemnity agreement with the Pennsylvania to defend the Railroad against Paro's action, and that it cannot now do so in this court; and that, in any event, under its contract with the Pennsylvania, Simpson was bound to indemnify the Railroad against Paro's action.

■ From the trial court's memorandum it would appear that the argument now made by Steffen was not presented to the lower court. However, the essence of Steffen's complaint is that Simpson's evidence was not sufficient to support the judgment. Rule 73.01(d) of the new Rules of Civil Procedure, V.A.M.R. provides, as did former Rule 3.23 and Section 510.310, subd. 4 RSMo 1949, V.A.M.S., that in cases tried by the court the sufficiency of the evidence to support the judgment may be raised on appeal whether or not that question was raised in the lower court. We are therefore obliged to consider Steffen's point. Handlan v. Handlan, 362 Mo. 1180, 247 S.W.2d 715; Greaves v. Huber, Mo.App., 235 S.W.2d 86.

■ If Simpson's evidence showed that it was not under a legal obligation to the Pennsylvania to save the Railroad harmless as to Paro's claim, and that it did so voluntarily, then Simpson is not entitled to indemnification from Steffen. For an indemnity against losses does not cover losses for which the indemnitee is not liable to a third person, and which he improperly pays. 42 C.J.S. Indemnity § 12, p. 580; Central Surety & Insurance Corporation v. Hinton, 233 Mo.App. 1218, 130 S.W.2d 235; Missouri Pac. R. Co. v. Sonken-Galamba Corporation, Mo.App., 274 S.W. 930. The parties are in agreement that the evidence showed that Paro's injury was caused by the negligence of the Railroad. Thus the decisive question presented is whether by the terms of their contract Simpson was under a legal duty to indemnify the Pennsylvania from the results of the Railroad's own negligence.

■ Whether an indemnitee can recover for losses caused by his own negligence depends on the language of the contract and what may be termed the subject matter thereof. Terminal R. Ass'n of St. Louis v. Ralston-Purina Co., 352 Mo. 1013, 180 S.W.2d 693. It has been held that as to acts which are not illegal, it is not contrary to public policy for an indemnitee to expressly contract with an indemnitor to save him harmless, as to third persons, from a loss sustained as the result of his own negligence. Kansas City, M. & B. R. Co. v. Southern Ry. News Co., 151 Mo. 373, 52 S.W. 205, 45 L.R.A. 380. However, the great weight of authority supports the rule that a contract of indemnity is not to be construed to indemnify the indemnitee against losses resulting to him through his own negligent acts " 'where such intention is not expressed in unequivocal terms.'" New York Cent. R. Co. v. Chicago & E. I. R. Co., 360 Mo. 885, 231 S.W.2d 174, 177; Missouri Dist. Tel. Co. v. Southwestern Bell Tel. Co.,

338 Mo. 692, 93 S.W.2d 19; Terminal R. Ass'n of St. Louis v. Ralston-Purina Co., supra; Central Surety & Insurance Corp. v. Hinton, supra; 27 Amer.Jur., Indemnity, p. 464, Sec. 15; 42 C.J.S. Indemnity, § 12, p. 580.

Does the agreement between Simpson and the Pennsylvania Railroad manifest in unequivocal terms the intention that Simpson should save the Railroad harmless from a loss resulting from its own negligence? Obviously there is no explicit provision to that effect, as in Kansas City, M. & B. R. Co. v. Southern Ry. News Co., supra. Nor does that intention appear from the general language used. The only part of the Simpson-Pennsylvania indemnity clause which is claimed to be applicable is Simpson's undertaking to save the Pennsylvania harmless from a claim for " * * * injuries (including death) to persons or property, or other causes whatsoever, in the event an attempt should be made to hold Railroad liable therefore, in connection with Trucker's business or operations hereunder." Granting that Steffen's operations were those of Simpson, such broad and indefinite language cannot be construed to impose on Simpson the obligation to indemnify the Pennsylvania from the consequences of its own wrong. In the leading case of Missouri Dist. Tel. Co. v. Southwestern Bell Tel. Co., supra, the telephone company leased to the telegraph company space for wires on a pole owned by the telephone company. Rose, a lineman for the telegraph company, was injured when a cross-arm owned by a third company, the light company, became detached under his weight. Rose sued all three companies, obtained a judgment for $40,000, and collected from the telegraph company. That company then sought contribution from the telephone company, which defended on the grounds that the telegraph company had agreed to save it harmless " 'from and against any and all * * * claims, suits, judgments for damages or injuries arising to persons or property or in any manner by reason of the use or maintenance by the lessee of plant facili-

ties hereunder'." [338 Mo. 692, 93 S.W. 2d 26.] In holding that that clause did not indemnify the telephone company from a loss resulting, in part, from its own negligence the court said (93 S.W.2d 19, loc. cit. 27) " * * * where such contracts are phrased in general terms, as here, they are held not to indemnify in instances where negligence of the indemnitee is the primary or a contributing cause of the loss or damages."

In the light of these rules of interpretation the conclusion is inescapable that by the terms of their agreement Simpson was under no legal duty to indemnify the Pennsylvania against the consequences of the Railroad's own negligence, and that it may not recover from Steffen the amount it expended in the defense, and settlement of Paro's action.

In reaching that conclusion we are not unmindful that in J. V. McNicholas Transfer Co. v. Pennsylvania R. Co., 6 Cir., 154 F.2d 265, 266, cited by Simpson, a contrary result was reached on the identical indemnity clause. The substance of that court's reasons are contained in the sentence " * * * The provision is plain and injuries caused by the negligence of the Railroad's employees are not excepted." That case involved a contract made in Ohio, and presumably was decided in accordance with the decisions of that state, although not a single citation is given. Whatever may be the law of Ohio, the latest and controlling decisions of our Supreme Court, which we are required to follow, make it plain that the contract is to be construed not from the viewpoint of whether the negligence of the indemnitee is expressly excepted, but whether the agreement by unequivocal terms expresses the intention to include a loss resulting from the negligence of the indemnitee. New York Cent. R. Co. v. Chicago & E. I. R. Co., supra; Missouri District Tel. Co. v. Southwestern Bell Tel. Co., supra.

For the reasons stated the Commissioner recommends that the judgment in favor of

Simpson be reversed and that the cause be remanded with directions to enter a judgment in favor of Steffen.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

Accordingly, judgment is reversed and the cause remanded with directions to enter judgment in favor of Steffen.

ANDERSON, P. J., RUDDY, J., and FULLER, Sp. J., concur.